IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| APRIL ROBERTS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SPRUCE MANOR NURSING & | : | NO. 14-CV-4338 |
| REHABILITATION CENTER, et al. | : | |

MEMORANDUM OPINION

Ditter, J.                                                                         August 12, 2015

      This case involves a common problem between employers and former employees – what may or may not be included in a reference to a new or prospective employer concerning the employee's work history. Before me are the plaintiff's motion to remand to state court and the defendants' motion to dismiss. For the reasons that follow, the motion to remand is being denied, and the motion to dismiss is also being denied.

      1.   Factual and Procedural Background

      Plaintiff, April Roberts, was employed as a nurse by Spruce Manor and Rehabilitation Center, a skilled nursing care and rehabilitation facility, from January 2007 through June 2011. Spruce Manor is located in Reading, Pennsylvania. Ms. Roberts' duties included assisting lab technicians draw blood from residents. In June 2011, Ms. Roberts was accused of improperly restraining a resident who was resisting having her blood drawn. The lab technician involved in the incident signed a written statement that

the assisting nurses, including Ms. Roberts, were holding the resident down so blood could be drawn and the resident was kicking and biting. The resident suffered a broken leg. Spruce Manor decided to terminate Ms. Roberts based on its investigation of these allegations.

Ms. Roberts challenged her termination by filing a grievance with the assistance of her union, SEIU Healthcare. During the grievance proceedings, Ms. Roberts and Spruce Manor "elected to amicably part ways by arranging for Ms. Roberts to resign." *Compl.* ¶ 28. As a result, Ms. Roberts, the Union, and Spruce Manor entered into a written confidential settlement agreement and general release that provided Ms. Roberts would be allowed to resign, she would be paid $2,750.00 (less withholdings and deductions) and Spruce Manor would give "a neutral job reference providing only the position she held, rate of pay and dates of employment." *Compl.*, Exh. A; *Removal Pet.* Exh. B. This agreement was executed in March 2012.

In December 2013, Ms. Roberts became employed at a Delaware healthcare facility, Regal Heights Healthcare. Delaware law requires healthcare and child care facilities obtain a "service letter" for all prospective employees that have prior employment. 19 Del. C. § 708(b). The service letter is a form provided by Delaware's Department of Labor.

> The form **shall** be signed by the current or previous employer and **shall** contain information about the type of work performed by the employee, the duration of the employment, the nature of the employee's separation from employment and

> **any reasonably substantiated incident involving violence, threat of violence, abuse, or neglect by the person seeking employment toward any other person, including any disciplinary action taken as a result of such conduct**.

19 Del. C. § 708(b)(2).  [Emphasis added].  Section 708(b)(3) requires the person seeking employment to authorize a full release for the employer to obtain any and all information about her current or former employment.  The statute also provides the current or former employer immunity from civil liability for such disclosure and proscribes any legal action for libel, slander or defamation.  19 Del. C. § 708(b)(10).

Consistent with Delaware law, Regal Heights sent Spruce Manor a service letter and a consent form signed by Ms. Roberts.  *Removal Pet.,* Exh. C.  The service letter included notification that the failure to provide all applicable and available truthful information known to the employer could result in penalties of $1,000 to $5,000.  The same penalties provision is included on Ms. Roberts' consent form.  Spruce Manor completed the form which consists of a series of check-off boxes indicating Ms. Roberts was discharged as the result of a reasonably substantiated incident involving abuse.  An optional question about whether Ms. Roberts would be rehired was checked no.  This was clearly not the neutral reference required by the settlement agreement.  Ms. Roberts also contends that it "was extremely false, negative, and damaging." *Compl.* ¶ 42.

When Regal Heights received this service letter, Ms. Roberts was asked about its contents.  She explained there was an error but, on February 3, 2014, she was discharged.  Ms. Roberts was "[d]evastated and flabbergasted not only at being confronted,

interrogated, and fired . . ., but also at this false and damaging communication . . ., at the breach of the Agreement, and at the potentially irreparable damage to her career and reputation." *Id.* ¶50.

Ms. Roberts then contacted Spruce Manor in an attempt to correct this reference and save her job with Regal Heights. Again, the Union attempted to intercede on her behalf. According to the complaint, Spruce Manor did not take immediate action to correct the service letter. On February 14, 2014, Spruce Manor provided a cover letter and amended service letter – but it was addressed to Ms. Roberts and not to Regal Heights. Ms. Roberts received a copy of this amended service letter from a union representative. She complained that the service letter was not addressed to Regal Heights and did not clearly identify Ms. Roberts. On February 22, 2014, a new cover letter was addressed to Regal Heights and indicated in the attached service letter that Ms. Roberts had resigned without any further explanation. None of the letters provided a retraction of the information provided in the original service letter. Royal Heights did not re-hire Ms. Roberts.

This lawsuit alleging defamation against Spruce Manor followed. In her complaint, Ms. Roberts contends Spruce Manor: 1) knew the information provided to Regal Heights in the first service letter was false; 2) was under contract to provide a neutral reference to any prospective employer; 3) provided the reference intentionally including defamatory information; and 4) harmed her career and reputation by the

disclosures.

Spruce Manor responded by removing the case from state court to federal court claiming this dispute arises from a confidential settlement agreement entered into to resolve a grievance of her termination and negotiated by Spruce Manor, Ms. Roberts and her union representative. Thus, Spruce Manor contends Roberts' claim, while raised as a state law claim, is properly before this court under § 301 of the Labor-Management Relations Act of 1947 ("LMRA"). *See* 29 U.S.C. § 185(a) (§ 301). Section 301 states, in relevant part, that

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U. S. C. § 185(a).

Having removed the case to this court, Spruce Manor seeks its dismissal, arguing that its collective bargaining agreement with Roberts' union requires the arbitration of grievances.

Ms. Roberts has filed a motion to remand arguing that § 301 does not apply because her claim is a state tort claim for defamation and does not arise from the collective bargaining agreement, the settlement agreement or its breach. Rather, she argues that the agreement is only relevant as a defense to Spruce Manor's potential claim

of a qualified privilege to release her employment information and an evaluation of her claim does not require interpretation of the collective bargaining agreement.

    2. Standard of Review

        A. Motion to Remand

Federal courts are courts of limited jurisdiction and can only hear cases arising under the Constitution, laws or treaties of the United States. 28 U.S.C. §§ 1331. Removal of a case to federal court is only proper if the case originally could have been brought in federal court. 28 U.S.C. § 1441(a). Because jurisdiction is limited, remand is favored where federal jurisdiction is not clear.

        B. Motion to Dismiss

I may dismiss a complaint for failure to state a claim only if it is clear that no relief would be granted under any set of facts consistent with the allegations of the complaint. For purposes of this motion, I accept as true all well-pleaded facts and will view them in the light most favorable to the nonmoving party.

    3. Discussion

        A. Motion to Remand

Spruce Manor contends removal is proper because this court has federal question jurisdiction. In deciding whether a federal question exists, I must apply the well-pleaded complaint rule whereby I look to the face of the complaint, rather than any defense asserted. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Thus, a case may

not be removed on the basis of a federal defense, including the defense of preclusion. *Id.* at 393. One exception to this rule is the "complete exemption" doctrine. *Id.* Where the removal petition demonstrates that the plaintiff's state claims are federal claims in substance, the preemptive force of federal law provides the basis for removal. Although instances of complete preemption are rare, the Supreme Court has found complete preemption with regard to § 301 of the LMRA. *See Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 559 (1968).

"When resolution of a state-law claim is substantially dependent upon analysis of the terms of a collective bargaining agreement, that claim must either be treated as a § 301 claim or dismissed as preempted by federal-labor contract law." *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 220 (1985).

The Court of Appeals for the Third Circuit has also held that "for purposes of section 301, a labor contract need not be a 'collective bargaining agreement' per se . . . ." *See Beidleman v. Stroh Brewery Co.,* 182 F.3d 225, 231 (3d Cir. 1999) (for purposes of § 301, a labor contract is not limited to the collective bargaining agreement and includes "an agreement between employers and labor organizations significant to the maintenance of labor peace between them") (quoting *Retail Clerks International Assoc. v. Lion Dry Goods, Inc.,* 369 U.S. 17, 28 (1962)). *See also Karnes v. Boeing Co.*, 335 F.3d 1189, 1197-98 (10th Cir. 2003) (finding that a settlement agreement on behalf of individual employee was between union and employer and thus within the purview of § 301); *Davis*

*v. Bell Atlantic-West Virginia, Inc.*, 110 F.3d 245, 249 (4th Cir. 1997) (§ 301 preempts an alleged breach of a union-negotiated agreement that settled an employee grievance); *Amalgamated Meat Cutters and Butcher Workmen of North America, Local 195. AFL-CIO v. M. Feder & Co.*, 234 F. Supp. 564, 567-68 (E.D. Pa. 1964) (settlement agreement reached by union on behalf of employee pending arbitration of grievance was a labor contract). The issue then becomes not whether the collective bargaining agreement must be interpreted to decide a state law claim, but whether the settlement agreement must be interpreted to resolve that claim.

In a case that is factually indistinguishable from this case, the district court concluded that "a settlement agreement is a labor contract for purposes of § 301 when the union is involved in negotiating the agreement on behalf of the employee and the agreement is intended to peacefully resolve an issue arising from the employment." *Nicholas v. Grapetree Shores, Inc.*, 2011 U.S. Dist. LEXIS 67494, *21-22 (D.V.I. 2011).[1] The court found that, as in *Beidleman*, the agreement was entered into by the employee, the union, and the employer "to establish peace and to resolve a controversy arising out of an employment relationship." *Id.* at 23. Thus, Nicholas' state claim of defamation was preempted and permitted to proceed in federal court.

In *Nicholas* and the instant case, the employer argued that the defamation claim

---

[1] Nicholas was terminated by his employer and his union representative filed a complaint on his behalf before the National Labor and Relations Board. The parties entered into a settlement agreement in which the employer agreed to treat Nicholas' separation as a voluntary resignation and agreed to remove documentation concerning his termination from his personnel file. Two years later, an employee made disparaging statements about Nicholas at a management meeting. Nicholas filed suit alleging, *inter alia*, a claim for defamation.

was dependent on the settlement agreement and preempted.  Nicholas argued that the defamatory statements were not "substantially" dependent on the agreement and that the falsity of the statement that Nicholas was terminated did not rest solely on the agreement. Here, as in *Nicholas*, the truth or falsity of the statement for termination is the crux of Ms. Roberts' defamation claim.[2]

Although Ms. Roberts refers to the settlement agreement in her complaint, she does not seek relief for breach of contract – a claim that would clearly be preempted. Instead, she raises a defamation claim that involves the conduct of Spruce Manor employees after the agreement had been reached that could be found to be a breach of contract, but independently could also be defamation.  "A plaintiff may bring a state tort action against an employer, even where he could have brought a similar claim based on a provision in his collective bargaining agreement, so long as the state claim does not require interpretation of the []agreement."  *Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 229 (3d Cir. 1995).

However, it is also evident in this case, as in *Nicholas*, that whether or not the settlement agreement substantiates the claim of falsity, the plaintiffs in both cases rely on

---

[2] To set forth a claim for defamation under Pennsylvania law, Roberts must show: 1) the defamatory nature of the communication; 2) its publication by the defendant; 3) its application to the plaintiff; 4) the understanding by the recipient if its defamatory meaning; 5) the understanding by the recipient of it as intended to be applied to the plaintiff; 6) special harm resulting to the plaintiff from its publication; and 7) abuse of a conditionally privileged occasion.  42 Pa. C.S.A. § 8343(a).  When a defamation claim is properly raised, the defendant has the burden of proving: 1) the truth of the defamatory communication; 2) the privileged character of the occasion on which it was published; and 3) the character of the subject matter of defamatory comments as of public concern.  42 Pa. C.S.A. § 8343(b).

it in arguing that the employer knew or should have known that the statement was false. Ms. Roberts' complaint is not only what Spruce Manor revealed in its response to Regal Heights, but that Spruce Manor knew its response was not the neutral reference required by the settlement agreement and was false because she was not discharged – she was permitted to resign.

 Ms. Roberts also acknowledges that Pennsylvania law provides that an employer

> who discloses information about a current or former employee's job performance to a prospective employer of the current or former employee, upon request of the prospective employer or the current or former employee, is presumed to be acting in good faith and, unless lack of good faith is demonstrated by clear and convincing evidence, is immune from civil liability for such disclosure or its consequences in any case brought against the employer by the current or former employee.

42 Pa. C.S.A.§ 8340.1(a). This presumption may be rebutted by evidence that the employer disclosed information it knew or should have known was false, knew or should have known was materially misleading, was false and provided with reckless disregard for the truth, or information the disclosure of which is prohibited by any contract right of the former employee. 42 Pa. C.S.A.§ 8340.1(a)(1)-(4). It is clear that Roberts anticipates using the settlement agreement to rebut this presumption, even as she contends that her claim should not be preempted because the settlement agreement "and its potential breach do not play an exclusive, but only a limited, role in Plaintiff's options to rebut Defendants' available affirmative defense." *Plt.'s Resp. to Mot. to Dism.* at 9.

Ms. Roberts contends further that the "agreement is tangential and unnecessary to the prosecution of the defamation claim. Whether the Defendants did or did not agree to provide other than a neutral reference is irrelevant. Ms. Robert's claim revolves around substantiating that Defendants sent false, damaging information to another employer which caused her injury." *Plt.'s Mem.* at 13. In other words, she contends that her defamation claim is not dependent on the promise to provide only a neutral letter and not to disclose why she was originally terminated, but whether the description of the reason for termination set forth in the disclosure to her new employer was defamatory.

A review of the complaint reveals that the settlement agreement will be implicated and the trier of fact will be required to interpret its meaning. The dispute between Roberts and Spruce Manor was resolved through the company's grievance procedure as set forth in the collective bargaining agreement. Roberts was represented in those proceedings by her union. There was no hearing or determination of the facts underlying her termination. Instead, the parties entered a written settlement agreement that provided Ms. Roberts would receive a neutral reference if a prospective employer contacted Spruce Manor. Spruce Manor did not abide by the terms of this agreement when it responded to Regal Heights' inquiry. Ms. Roberts sought assistance from the union when she learned of this breach. Roberts will use the settlement agreement to prove Spruce Manor's intent to defame her.

To resolve this defamation claim, the fact finder will have to consider the purpose

and the effect of the settlement agreement.  Does it mean the charges were unfounded as Roberts asserts, or is it simply a compromise that permits the parties to go their separate ways without further litigation?  How does it effect the responsibility of the employer to answer the Delaware service letter?  What is the impact of Roberts' consent?  While it is clear that the settlement agreement was breached – does that necessitate a finding that the service letter responses were false or defamatory?

Contrary to Roberts' assertions, I find that both the factual assertions in the complaint and the Pennsylvania employer presumption establish that the resolution of Roberts' defamation claim is substantially dependant on the settlement agreement between Roberts and Spruce Manor.  Thus, I find this claim is preempted by § 301 and the motion to remand will be denied.

### B.  Motion to Dismiss

Having established federal jurisdiction, Spruce Manor contends this action must be dismissed because Article 20 of the collective bargaining agreement mandates the arbitration of such disputes.[3]   I conclude, however, that the CBA and its provision for

---

[3] Article 20 provides as follows:

20.1  A grievance which has not been resolved may, within ten (10) working days after completion of Step 3 of the grievance procedure, be referred to arbitration by the Employer or the Union to an arbitrator selected in accordance with the procedures of the American Arbitration Association (AAA).  The arbitration shall be conducted under the Voluntary Labor Arbitration Rules then prevailing of the AAA.  The moving party shall notify the other party within ten (10) working days following receipt of the other party's response to a Step 3 grievance of its intent to submit said grievance to arbitration.  The Demand for Arbitration must be filed within ten (10) days of the Employer's receipt of the letter of intent.

20.2  The award of an arbitrator hereunder shall be final, conclusive and binding upon the

arbitrators is not applicable here. The settlement agreement provides that it is the entire agreement and understanding between the parties. It contains no reference to arbitration nor the CBA. It follows that the motion to dismiss must be denied.

At oral argument, I asked counsel what recourse the plaintiff would have if I found this claim was preempted by § 301. It was the defendant's position that Robert's only opportunity to pursue a defamation claim was under the collective bargaining agreement and that provided for arbitration. Further, defendant asserted that such review is now barred by the six month statute of limitations imposed in labor disputes.

It was Roberts' position that, as in *Nicholas,* she has no remedy under the collective bargaining agreement because she is no longer an employee, and therefore, she should be permitted to pursue her claim in this court. I agree.

First, the settlement agreement specifically provides that Roberts does not waive any claim that arises after the agreement was signed and does not include an arbitration mandate or reference to union representation. Second, the collective bargaining agreement does not provide that former employees would have the same access to its

---

Employer, the Union and the employees.

20.3  The fees and expenses of the AAA and the arbitrator shall be borne equally by the parties.

20.4  The Arbitrator shall have jurisdiction only over disputes arising out of grievances, as defined in Section 19.1, and he shall have no power to add to, subtract from or modify in any way any of the terms of this Agreement.

*See Removal Pet.*, Exh. "D" at 41-42.

grievance procedures or that the union would continue to represent a former employee in a complaint for conduct that occurred well after her employment had ended. Nor is the issue before me a claim that the collective bargaining agreement itself was violated.

As neither the collective bargaining agreement, nor the settlement agreement set forth the manner of review for conduct after the parties have ended their employer/employee relationship, I conclude that the defamation claim may proceed before me under § 301.

An appropriate order follows.